UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-81558-RAR

**CLARENCE SIMMONS**, *et al.*,

    Plaintiffs,

v.

**FORD MOTOR COMPANY**,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S *OMNIBUS*
MOTION TO EXCLUDE PLAINTIFFS' EXPERTS**

**THIS CAUSE** comes before the Court upon Defendant's *Omnibus* Motion to Exclude Plaintiffs' Experts' Opinions [ECF No. 114] ("Motion"). The Court has reviewed Defendant's Motion, Plaintiffs' Response in Opposition [ECF No. 128]; Defendant's Reply in Support [ECF No. 142]; and other relevant portions of the record. For the reasons set forth below, it is hereby

**ORDERED AND ADJUDGED** that Defendant's *Omnibus* Motion to Exclude Plaintiffs' Experts' Opinions [ECF No. 114] is **DENIED**.

**BACKGROUND**

This is a Class Action suit brought by Plaintiffs on behalf of themselves and similarly situated members of a purported Nationwide Class and multiple State Classes against Ford Motor Company alleging design defects of Ford Mustang-, Expedition-, and Explorer-branded vehicles. *See* Second Amended Class Action Complaint [ECF No. 70] ("Compl.") at 1–2. The alleged defect causes "the Class Vehicles' aluminum panels to corrode and the exterior paint on the aluminum body parts to bubble, flake, peel, rust and/or blister." *Id*. at 2. Plaintiffs' Motion for Class Certification is presently before the Court. *See generally* [ECF No. 151]. In support of their

Motion for Class Certification, Plaintiffs offer three expert witnesses: Erik Anderson (design defect), Edward Stockton (damages), and Kirk Kleckner (warranty valuation). Mot. at 1. Defendant filed the instant Motion requesting that this Court strike all three of Plaintiffs' class certification experts pursuant to Federal Rules of Evidence 410, 402, and 702, as well as the Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). *Id.*

## LEGAL STANDARD

Federal Rule of Evidence 702 "controls the admission of expert testimony." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (*en banc*). When expert testimony is introduced under Rule 702, "the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence." *City of S. Miami v. Desantis*, No. 19-22927, 2020 WL 7074644, at *3 (S.D. Fla. Dec. 3, 2020) (citing *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir. 2005)). "The presumption is that expert testimony is admissible, so that once a proponent has made the requisite threshold showing, further disputes go to weight, not admissibility." *Id.* (quoting *Little v. Wash. Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 408 (D.D.C. 2017)) (internal quotation marks omitted). Thus, "the rejection of expert testimony is the exception rather than the rule." *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850 (11th Cir. 2021) (quoting Fed. R. Evid. 702 Advisory Committee's Note to 2000 Amendments).

As the Supreme Court explained in *Daubert*, the purpose of the expert admissibility rules is for district courts to serve as "gatekeepers to ensure that speculative, unreliable expert testimony does not reach the jury." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (citing *Daubert*, 509 U.S. at 597 n.13) (internal quotation marks omitted). However, this role must be properly balanced with a parties' right to a jury trial where "[v]igorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

In the Eleventh Circuit, the admissibility inquiry has been distilled down to three factors, which require the district court to consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address;
>
> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and
>
> (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998). These factors are referred to as qualification, reliability, and helpfulness. *Frazier*, 387 F.3d at 1260. While "there is inevitably some overlap among the basic requirements—qualification, reliability, and helpfulness—they remain distinct concepts and the courts must take care not to conflate them." *Id*.

With respect to qualification, an expert may be qualified based on "knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, No. 12-21089, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007)). "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Id*. (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citing *Kilpatrick v. Breg, Inc.*, No. 8-10052, 2009 WL

2058384, at *1 (S.D. Fla. June 25, 2009)). "After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion." *Carnival Corp.*, 2013 WL 752697 at *3 (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976)).

The reliability inquiry requires the court to determine "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261–62 (citation omitted) (internal quotation marks omitted). Generally, to make this determination, the district court examines: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Id*. (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). The Eleventh Circuit has emphasized that alternative questions may be more probative in the context of determining reliability as these factors are not dispositive. *See id*. Accordingly, trial judges are afforded "considerable leeway" when assessing reliability. *Id*. at 1258 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

For example, in design defect cases where "a proposed expert's opinion relies principally upon his experience and knowledge, the Court must satisfy itself that the witness has appropriately explained how his experience leads to the conclusion he reached, why that experience provides a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Clena Invs., Inc*, 280 F.R.D. at 663 (citing *United States v. Brown,* 415 F.3d 1257, 1261 (11th Cir. 2005)). Accordingly, "design experts, like experience-based experts generally, are not necessarily required to 'test' their opinions." *Anderson v. FCA U.S., LLC*, No. 16-558, 2019 WL 826479, at *4 (M.D.

Ga. Feb. 21, 2019) (citing *Clena Invs., Inc*, 280 F.R.D. at 663); *see also Pineda v. Ford Motor Co.*, 520 F.3d 237, 248–49 (3d Cir. 2008) ("Pineda proffered Clauser as an engineering expert who understood the stresses and forces that might cause glass to fail. Clauser's specialized, rather than generalized, experience in this area allowed him to recognize that exerting a force on one area of the rear liftgate glass before exerting a force on another area of the glass could lead to its shattering. Clauser did not have to develop or test alternative warnings to render an opinion . . . ."); *Schenone v. Zimmer Holdings, Inc.*, No. 12-1046-J-39MCR, 2014 WL 9879924, at *5–8 (M.D. Fla. July 30, 2014) ("In some cases, the expert's experience in conjunction with knowledge, skill, training or education alone may provide a sufficient basis to the reliability of the expert's opinion."). While testing is generally not required in design defect cases, "an expert's *unexplained* assurance that [his] opinions rest on accepted principles" is not enough. *Furmanite Am., Inc.,* 506 F. Supp. 2d at 1130 (citing *McClain v. Metabolife Int'l, Inc.,* 401 F.3d 1233, 1242 (11th Cir. 2005)) (emphasis added).

The final element—helpfulness—considers whether the expert testimony applies to "matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014) (quoting *Frazier*, 387 F.3d at 1262). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262–63. This prong requires trial courts to "exclude expert testimony that is 'imprecise and unspecific,' or [when the] factual basis is not adequately explained." *Id*. (quoting *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005)). To be helpful, a nexus must exist between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 591). For example, testimony is not helpful "where a large

analytical leap must be made between the facts and the opinion." *Id*. (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

Although sometimes helpful, a hearing is not necessary for the Court to fulfill its gatekeeping role of determining whether an expert's testimony meets the requirements set forth in *Daubert*. *See Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1252 n.10 (11th Cir. 2007); *see also United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001) (holding that *Daubert* hearings are not required); *Cook ex rel. Estate of Tessier*, 402 F.3d at 1113 (noting that the trial court was under no obligation to hold a *Daubert* hearing). The decision to hold a *Daubert* hearing is within the discretion of the Court. *United States v. Junkins*, 537 F. Supp. 2d 1257, 1259 n.1 (S.D. Ala. 2008) (denying the Government's requests for a hearing because it would not have materially advanced the Court's understanding of the issues). Here, a *Daubert* hearing will not materially advance the Court's understanding of the proposed expert testimony and the issues before it. Thus, the Court declines to hold one. *Corwin*, 475 F.3d at 1252 n.10 ("hearings are not prerequisite to such determinations under the Federal Rules or established law.")

## **ANALYSIS**

Defendant's Motion impermissibly tows the line between a challenge to class certification, a challenge to the overall merits of Plaintiffs' case, and a challenge to the reliability and helpfulness of Plaintiffs' experts—despite being stylized as solely the latter. Defendant appears to conflate the requirements of *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) with the standards the Supreme Court laid out for evaluating the admissibility of expert testimony in *Daubert*. In *Comcast*, the Supreme Court held that a "district court may not certify a class without establishing with admissible evidence that damages can be measured on a class wide basis and are consistent with a plaintiff's liability case." *Hays v. Nissan N. Am., Inc.*, No. 17-00353, 2019 WL 12054662, at *2

(W.D. Mo. Sept. 26, 2019).  However, the inability of a single expert to satisfy class certification requirements through their testimony alone is not an appropriate indicum of the admissibility of the expert's testimony under *Daubert*.  In challenging Plaintiffs' experts, Defendant cites several cases that relate solely to the standards for class certification as opposed to the standards that establish the admissibility of expert testimony.

For example, in challenging expert Edward Stockton, Defendant states that "his opinions are insufficient to satisfy Plaintiffs' burden of proving that damages can be calculated on a class wide basis." Mot. at 21.  This argument has no basis under *Daubert* and ignores the simple fact that Stockton's opinion alone need not satisfy Plaintiffs' burden of establishing damages in order for him to be qualified to give testimony in this case.  Similarly, Defendant challenges expert Erik Anderson because he is purportedly unable to establish that the "alleged defect is material and the material defect affects the market value of the vehicles." Mot. at 11 (cleaned up).  Like the argument on class wide damages, this argument ignores the fact that to be admissible, Anderson's "testimony need not prove the plaintiffs' case by [itself]; [it] must merely constitute one piece of the puzzle that the plaintiffs endeavor to assemble[.]" *City of Tuscaloosa*, 158 F.3d at 565.  Additionally, in Defendant's Reply, the challenge to Anderson's *reliability* discusses the overall merits of Plaintiffs' case, stating, "[a]s a legal matter, Plaintiffs' theory should not survive summary judgment." Reply at 5.

These arguments are inappropriate not only because the Court presently has before it Plaintiffs' fully briefed Motion for Class Certification [ECF No. 151], but because these arguments have no bearing on the reliability of individual experts.  To consider these arguments would not only be a waste of judicial resources as it would require the Court to review Defendant's arguments against class certification multiple times, but it would also be legally impermissible to do so

because this Circuit's precedent requires "a district court [to] conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion." *Sher v. Raytheon Co.*, 419 F. App'x 887, 890–91 (11th Cir. 2011). Accordingly, this Order addresses whether the three challenged experts' testimony is admissible under *Daubert*, not if their testimony is sufficient to establish class certification or whether Plaintiffs could succeed on the merits through the testimony of these experts alone.[1] The Court will address each expert in turn.

## I. Erik Anderson

Defendant's Motion seeks to exclude the opinions of Erik Anderson ("Anderson"). *See* Mot. at 3–10. Anderson is a proposed mechanical engineering and vehicle design expert who has opined on the alleged design defects of the Class Vehicles—which Plaintiffs maintain results in increased susceptibility to early-onset filiform corrosion initiating at the trim end of the outer panel of the hood of said vehicles. *See generally* [ECF No. 100-3] Expert Report of Erik Anderson ("Anderson Report").

Anderson has a Bachelor of Science in Mechanical Engineering from the University of Michigan and spent 16 years working for Nissan and then Honda. Anderson Report at 2–3. At both Nissan and Honda, he was responsible for designing hoods and other body parts to minimize the potential for corrosion. *Id*. However, Defendant does not challenge Anderson's qualifications. Mot. at 3. Instead, Defendant claims Anderson's opinions are unreliable and unhelpful because "(1) errors on critical issues pervade his report, (2) he ignores all aspects of the design of Class

---

[1] In its Motion, Defendant also challenges Plaintiffs' experts' testimony under Rules 401 and 402 of the Federal Rules of Evidence. Mot. at 1. This argument is easily disposed of. Rule 401 simply states "[e]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action[,]" while Rule 402 states that "[i]rrelevant evidence is not admissible." Here, Plaintiffs' experts offer testimony regarding the existence of a design defect and the potential for damages. As this is a consumer class action alleging the existence of a design defect and requesting damages due to said defect, this "evidence is clearly relevant under Rule 401's low bar." *United States v. Chukwu*, 842 F. App'x 314, 319 (11th Cir. 2021).

Vehicles except one, (3) he never tested his opinions in any appropriate way, and (4) his opinions are not relevant because he has no idea how Class Vehicles perform relative to other vehicles class members might have purchased." *Id*. Although Defendant seems to confuse reliability and helpfulness throughout its Motion, the first three criticisms constitute an attack on Anderson's reliability while the fourth goes to helpfulness. However, the Court finds that Anderson's opinions meet the standards for both reliability and helpfulness under *Daubert*. Thus, the Anderson Report warrants consideration at the class certification stage.

### a. Reliability

Although Defendant raises potential errors with Anderson's opinions, the Court does not find Anderson's methodology "so unreliable to warrant exclusion." *Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, No. 18-63130, 2020 WL 1666763, at *4 (S.D. Fla. Apr. 3, 2020); *see also Banta Props., Inc. v. Arch Specialty Ins. Co.*, No. 10-61485, 2011 WL 13096149, at *4 (S.D. Fla. Dec. 20, 2011) ("Quelette's method was not so unreliable that the Court can rule as a matter of law that the jury should not hear his opinion."); *Leblanc v. Coastal Mech. Servs., LLC*, No. 4-80611, 2005 WL 8156075, at *2 (S.D. Fla. Sept. 15, 2005) ("[T]he Court cannot find that the information relied upon by Dr. Leporowski to form her opinion so unreliable and lacking in probative weight so as to warrant the wholesale exclusion of her testimony.").

First, Defendant claims that Anderson erroneously stated that on the Mustang and Explorer hoods, Ford only applied over-hem sealer to the leading edge of the hoods. Mot. at 3. To support this contention, Defendant points to the Anderson Report, which shows Explorer hoods with annotations indicating that over-hem sealer was applied to the leading edge of the hood and approximately halfway up the sides of the hood. *Id*. (citing Anderson Report at 9). Further, the Anderson Report includes an exhibit showing that the S550 Mustang, introduced in 2015, had

over-hem sealer around the full perimeter of the hood. *Id*. Defendant states that this is further supported by Ford's CAD drawings that show the S550 Mustang had a full perimeter hem sealer. *Id*.

These mistakes, to the extent they can be characterized as such, clearly go to the weight the factfinder may ultimately choose to afford Anderson's opinions as opposed to their admissibility. In fact, it is not clear from the record that these were mistakes at all. As Plaintiffs point out in their Response, whether Anderson correctly considered the location of the over-hem sealer on the Explorer is largely semantics because the Explorer's hood features a broad curve design such that it is unclear where the leading-edge ends, and the sides begin. Resp. at 4.

Moreover, the allegedly erroneous opinion related to the Mustang appears to be a result of Defendant's own erroneous response to an interrogatory. *Id*. at 3–4. The Anderson Report cites Defendant's First Supplemental Answer to Interrogatory No. 19, where Defendant states that it did not adopt full perimeter over-hem sealer until the 2017 model year Mustang. Anderson Report at 34. Defendant's Interrogatory Response was not amended until after Anderson had completed his report. *See* Interrogatory No. 19 (indicating that it was served on January 19, 2021). Thus, questioning Anderson's reliability based on his supposedly mistaken assertion that Ford only applied over-hem sealer to the leading edge of the Mustang hood in 2015 would be misguided.

Second, Defendant claims that Anderson's examination and analysis of twelve market exemplar hoods was erroneous. Mot. at 4–5. Defendant posits that Anderson only examined ten hoods—only six from Class Vehicles, and only three from vehicles that were driven less than six years. *Id*. at 4. Further, Defendant claims this test was flawed because Anderson only examined hoods with visible signs of corrosion. *Id*. at 5. Once again, this challenge is largely semantics. Anderson examined ten hoods and two tailgates, and eight vehicles were the same models as the

Class Vehicles, albeit two of which were from earlier or later model years. Anderson Report at 12; 16; 35. Although Defendant is correct that Anderson examined hoods with corrosion, Plaintiffs point out that "Anderson chose hoods with the corrosion for the purpose of investigating where it initiates typically . . . and how it grows[,]" contrasting the locations where corrosion presented to "the locations of the hem joint that did not exhibit corrosion[.]" Resp. at 5. He then used this information to form his overall conclusion that the over-hem seal led to corrosion.

Third, Defendant maintains that Anderson ignored all aspects of the Class Vehicles' designs except one. Mot. at 6. Defendant alleges that Anderson "consciously ignored additional protections put into Ford hoods, instead focusing only on the leading edge of the hood." *Id*. Specifically, Defendant believes Anderson's report is deficient due to a failure to consider "other drainage enhancement" and "the corrosion protection systems in Explorers and Mustangs." *Id*. In regard to the Expedition, Defendant claims that Anderson failed to consider the corrosion protection system in place when concluding that the Explorer's hood "has no drain path for trapped moisture[,]" and noting that the vehicle "has no over-hem sealer anywhere on the hood." *Id*. at 7 (quoting Anderson Report at 11). But concluding that a single aspect of the Class Vehicle resulted in corrosion in no way indicates that Anderson ignored all other aspects of the Class Vehicles' designs. Indeed, nothing in Anderson's report indicates that he failed to consider "other drainage enhancement" or "the corrosion protection systems in Explorers and Mustangs[;]" instead, his overall conclusion implies that these features were insufficient to mitigate the possibility of corrosion based on the presence of design defects. Once again, the extent of Anderson's consideration of the Class Vehicles' various design aspects goes to weight not admissibility.

Defendant's final reliability challenge rests on the claim that Anderson conducted "no appropriate testing." *Id*. at 7. In making this argument, Defendant relies on the purported issues

with Anderson's examination and analysis of twelve market exemplar hoods. *Id*. at 7–8. Defendant claims that although Anderson holds this analysis out as a test, it was flawed because Anderson failed to consider other sources of corrosion. *Id*. This argument ignores the fact that Rule 702 does not require a design engineer, like Anderson, whose opinion is based on experience, knowledge, training, and education, to perform any testing. Anderson's opinions are based on his knowledge, experience, and education as a mechanical engineer and vehicle design expert. To suggest that a lack of empirical testing is automatic grounds for exclusion is directly contradicted by *Daubert*'s treatment in the Eleventh Circuit. *See Frazier*, 387 F.3d at 1262 ("These [*Daubert*] factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion.") (citing *Kumho Tire*, 526 U.S. at 150–52; *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999)).

In short, Defendant's reliability arguments fail to establish that any purported mistakes in the Anderson Report warrant his exclusion. Further, the lack of empirical testing is not enough to overcome the reliability of Anderson's opinions based on his extensive experience in vehicle design. The Court is satisfied that Anderson "has appropriately explained how his experience leads to the conclusion he reached, why that experience provides a sufficient basis for the opinion, and how that experience is reliably applied to the facts[,]" through testimony regarding his past roles in designing anti-corrosion systems in similar vehicles and consulting on these issues in numerous representative matters. *Clena Invs., Inc.*, 280 F.R.D. at 663.

    b. **Helpfulness**

While Defendant claims Anderson does not opine on how Class Vehicles compare to other vehicles with respect to corrosion, the Court is convinced that Anderson's testimony is sufficiently

helpful to assist "the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa*, 158 F.3d at 562. Specifically, Defendant claims "that absent evidence that Ford vehicles perform significantly worse than its competitors with respect to corrosion, Anderson's opinion that Ford vehicles are 'defective' because they do not all meet the six year 100% corrosion free standard is not relevant to Plaintiffs' theories." Mot. at 12.

While Defendant may be correct that Plaintiffs cannot succeed on the merits without proving the alleged defect is material and the material defect affects the market value of the vehicles, Anderson's "testimony need not prove the plaintiffs' case by [itself]; [it] must merely constitute one piece of the puzzle that the plaintiffs endeavor to assemble before the jury." *City of Tuscaloosa*, 158 F.3d at 565. Anderson's testimony that an alleged design defect in the Class Vehicles results in increased susceptibility to early-onset filiform corrosion initiating at the trim end of the outer panel of the hood would clearly be helpful to a lay person in determining whether the defect is material and whether that defect impacts the market value of the vehicles.

Lastly, although unnecessary at this stage of the litigation, Plaintiffs maintain they could establish that the Class Vehicles' hoods fail at a significantly higher rate than comparable vehicles through the testimony of other experts. Resp at 11–12. Thus, it is clear that Anderson's testimony is sufficiently helpful to constitute a "piece of the puzzle" that would allow a trier of fact to determine the ultimate issue. *City of Tuscaloosa*, 158 F.3d at 565.

**II.     Edward Stockton**

Defendant's Motion similarly seeks to exclude the expert opinions of Edward Stockton ("Stockton"). Mot. at 12. Stockton is a proposed damages expert who has opined on the existence and extent of the damages; assisted the Plaintiffs in developing methods for quantifying and

allocating those damages; and has given an opinion on whether it is possible to execute those methods on a class-wide basis. *See generally* [ECF No. 97-3] Exhibit 42, Expert Report of Edward M. Stockton ("Stockton Report").

Stockton has a Bachelor of Arts in Economics from the University of Western Michigan as well as a Master of Science in Agricultural and Resource Economics from the University of Arizona. Stockton Report at 1–2. For the past 23 years, Stockton has served in various roles in The Fontana Group, a consulting firm that provides economic consulting services and expert testimony regarding the retail motor vehicle industry. *Id*. at Tab 1, 1–2. Stockton presently serves as the Vice President and Director of Economics Services of the Fontana Group and has consulted in some capacity on over 200 representative client assignments, many of which involved design defects in automobiles. *Id*. However, once again, Defendant does not challenge Stockton's qualifications. Mot. at 12. In its Motion, Defendant parses Stockton's report into two opinions: "1) giving everyone in the class the cost to replace the hoods on their vehicles will give everyone the 'benefit of their bargain' and (2) he will be able to calculate (but has not yet calculated) the cost of replacing the hoods." *Id*. (citations omitted).

Defendant challenges Stockton's opinion on three grounds: 1) "Stockton's 'benefit of the bargain' model of damages ignores the actual bargain struck by consumers[;]" 2) "Stockton's model is contrary to the economic theory on which he purports to rely[;]" and 3) "Stockton's cost of repair method of measuring benefit of the bargain damages is irrelevant and contrary to applicable law[.]" Mot. at 12–18 (cleaned up). The first two criticisms are essentially an attack on the reliability of Stockton's testimony, while the third questions its helpfulness. However, the

Court finds that Stockton's opinions meet the standards for both reliability and helpfulness under *Daubert*. Thus, the Stockton Report warrants consideration at the class certification stage.

    *a. Reliability*

In challenging Stockton's reliability, Defendant first alleges that Stockton's "benefit of the bargain" model ignores the actual bargain struck by consumers. Mot. at 12. Defendant posits that Stockton never looked at Ford's warranty and never considered the terms of any actual bargain. *Id*. While a Plaintiff's expert's failure to consider the terms of the warranty in a damages model may be a death knell at the class certification stage, Stockton is not the sole damages expert offered. *See generally* [ECF No. 97-3] Exhibit 43, Declaration of Kirk Kleckner ("Kleckner Report"). Instead, Plaintiffs have offered Stockton to evaluate economic loss using repair cost as a proxy, which could ultimately be one component of their overall theory of damages. Resp. at 21. Indeed, Plaintiffs offer the Kleckner Report to establish that various models "can be used to value the extended warranties in this case." *Id*. Thus, the Stockton Report is not unreliable solely because it did not directly factor in the warranty when evaluating economic loss using repair cost as a proxy. Further, it is unclear whether Stockton failed to take into account the warranty given his underlying assumption that "the reasonable expectation[] of consumers" is a "defect-free vehicle[] or remedies (warranties) in the event that the vehicle is not delivered in a defect-free condition." Stockton Report at 9.

The contention that Stockton "never considered the terms of any actual bargain[,]" is a similarly flawed challenge to his reliability as an expert. Stockton was retained to assist Plaintiffs in developing a method for quantifying and allocating damages. *Id*. at 19. In doing so, he utilized his knowledge and experience to determine that repair cost used as a proxy for benefit of the bargain damages would allow the class members to receive the "benefit of their bargain because

they would be put in the same position they would have been had the car not been sold with the [defect] – [the repair] is the cost necessary to make the vehicles conform to the value Plaintiffs thought they were getting in the price tendered." *Sloan v. Gen. Motors LLC*, No. 16-07244, 2020 WL 1955643, at *48 (N.D. Cal. Apr. 23, 2020) (citing *Falco v. Nissan N. Am. Inc.*, No. 13-00686, 2016 WL 1327474, at *12 (C.D. Cal. Apr. 5, 2016)).  As Plaintiff points out, this exact method has been approved by numerous federal courts, as in *Hays*, 2019 WL 12054662 (approving Stockton's benefit-of-the-bargain model), *Sloan*, 2020 WL 1955643 (same), and *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811 (9th Cir. 2019) (generally approving of repair cost as a proxy for benefit of the bargain damages).  Accordingly, the Court is satisfied with Stockton's reliability as it relates to consideration of the warranty.

Secondly, Defendant criticizes Stockton for not properly applying expected utility theory. Mot at 15.  However, a close examination of the Stockton Report clearly indicates otherwise.  For example, Stockton states that consumers consider "the future performance of a good or service and the risk associated with different levels of performance." *Id*. (emphasis omitted).  He proceeds to cite "classical decision theory" as a basis for his opinion that consumers "choose options perceived at the time of purchase to be preferable to alternatives when discrete choices are available." *Id*. (citing Stockton Report at 4).  And he also posits that consumers balance positive and negative "expected utilities" across "competing goods and services." *Id*. (citing Stockton Report at 5) (emphasis omitted).  Most importantly, the Stockton Report concludes that "[t]hese expected outcomes . . . assess potential purchases by taking into account . . . the probabilities of positive and negative outcomes, the timing of the probability of positive and negative outcomes, and the

magnitude and direction of those potential outcomes." *Id*. (citing Stockton Report at 6) (emphasis omitted).

Notably, Defendants' exact argument was rejected in *Hays*. 2019 WL 12054662 at *4. In *Hays*, not only was the court considering the sufficiency of the application of expected utility theory in a case related to a corrosion-based design defect against an automobile manufacturer, but both plaintiffs and defendants offered the exact same experts that the parties offer here. *Id*. Just as the court found in *Hays*, this Court finds that Stockton's understanding and application of expected utility theory is sufficiently reliable to survive a challenge under *Daubert*. Stockton reliably outlines the principles of expected utility theory and appears to apply them to the facts at issue. Defendants main critique, that Dr. Harless, Defendant's economist, disagrees with Stockton's application of the theory, goes to weight, not admissibility; in other words, the trier of fact would be tasked with determining which experts' methods they find to be more credible.

### b. *Helpfulness*

Defendant challenges the relevance of Stockton's testimony because "Stockton's repair cost model for benefit of the bargain damages is contrary to how Florida, California, and New York measure benefit of the bargain damages." Mot. at 18. Specifically, Defendant cites this Court's opinion in *Ohio State Troopers Ass'n v. Point Blank Enters.*, 481 F. Supp. 3d 1258, 1284 (S.D. Fla. 2020), *aff'd.*, 20-13588, 2021 WL 4427772, at *2 (11th Cir. Sept. 27, 2021) for the proposition that benefit of the bargain damages are not available in Florida. But the simple fact that such damages are unavailable in Florida does not render Stockton's Report inadmissible. "To avoid exclusion on *Daubert* grounds, it is only necessary for Plaintiffs to demonstrate that the measure of damages set forth in [Stockton's] report can apply to at least one of Plaintiffs' claims. That is because [Stockton's] testimony is admissible even if it may only assist the trier of fact with

determining 'a fact in issue' (provided the other *Daubert* requirements are satisfied)." *Ohio State Troopers Ass'n,* 2020 WL 1666763 at *6 (citing *Rink*, 400 F. 3d at 1292). Accordingly, for purposes of *Daubert*, as long as benefit of the bargain damages are available in one of the thirteen states under the laws of which this action is brought, Stockton's testimony would "assist the trier of fact with determining 'a fact in issue[.]'"[2] Thus, Stockton's testimony is sufficiently helpful under *Daubert*.

### III.   Kirk Kleckner

Finally, Defendant's Motion seeks to exclude the opinions of Kirk Kleckner ("Kleckner"). Kleckner is a Certified Public Accountant and a proposed damages expert who has opined on his ability to calculate the value of the warranty for specific vehicle components under Ford's warranties and the valuation methodologies underlying these hypothetical calculations. Kleckner Report at 1–3.

Kleckner has a Bachelor of Arts in Accounting and Business Administration from Wartbug College as well as a Master of Business Administration from the University of Minnesota. Kleckner Report at Exhibit A. His experience includes seven years as the Chief Financial Officer of an automotive dealership group; 19 years with an accounting firm, including roles as shareholder, Chief Operating Officer, and Director of Business Valuation and Litigation Support Services; and performing services for hundreds of companies in a wide array of industries, including retail car dealerships, property and casualty insurance, warranty insurance, and

---

[2]  For example, Plaintiffs have asserted claims under Alabama law, which "has long followed the 'benefit of the bargain' rule." *Reynolds v. Mitchell*, 529 So. 2d 227, 233 (Ala. 1988).

distribution. *Id*. Kleckner has served as an expert in four major automotive warranty related class action settlement valuation determinations. *Id*. at 1.

However, once again, Defendant does not challenge Kleckner's qualifications. Mot. at 21. Defendant instead criticizes what they believe is "[Kleckner's] only conclusion . . . that available methodologies exist to determine the value of a warranty for a vehicle component and those methodologies are applicable in this particular case." *Id*. at 22 (quoting Kleckner Report at 1) (internal quotation marks omitted). Defendant argues that, because the Kleckner Report makes no mention of overpayment or ineffective repairs, his opinion "does not advance the question in dispute for which the opinion is proffered"—hence, "there is no 'fit' and the opinion should be excluded." *Id*. (quoting *Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 502 F. Supp. 2d 1237, 1249 (S.D. Fla. 2007)) (internal quotation marks omitted). Additionally, Defendant criticizes Plaintiffs' characterization of Kleckner's testimony in their Motion for Class Certification. *Id*. at 21–22.

Defendant's arguments, once again, confuse the requirements of *Comcast* and *Daubert*. *Carideo v. Whet Travel, Inc.*, No. 16-23658, 2018 WL 1367444, at *11 (S.D. Fla. Mar. 16, 2018) ("[T]he Court must be careful not to conflate questions of admissibility of expert testimony with the weight appropriately to be accorded to such testimony by the fact finder."). Under the requirements of Rule 702, there is no requirement that Kleckner calculate class wide damages or show precisely how they will be calculated. The Kleckner Report provides a detailed description of the various approaches reasonably relied upon by courts and experts in his field for valuing Plaintiffs' damages as to the Unfair and Deceptive Warranty Classes. Kleckner Report at 3. Kleckner discusses how the Market Approach, the Cost Approach, or both, can be used to value the extended warranties in this case. *Id*. at 3–4. Finally, Kleckner details a list of factors that

would be essential in making the calculations.  *Id*.  None of Defendant's arguments undercut the fact that Kleckner's "testimony will aid the trier of fact in determining one or more facts in issue," *Serendipity at Sea, LLC v. Underwriters at Lloyd's of London Subscribing to Pol'y No. 187581*, No. 20-60520, 2021 WL 981028, at *4 (S.D. Fla. Mar. 16, 2021), or that the testimony "concerns matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262. The ability to calculate class-wide warranty damages is clearly at issue and thus, Kleckner's testimony is helpful under *Daubert*.  Moreover, the sufficiency of his testimony to establish class certification has no bearing on admissibility; any averred weaknesses in the Kleckner Report will be properly considered during the Court's review of Plaintiffs' Motion for Class Certification.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's *Omnibus* Motion to Exclude Plaintiffs' Experts' Opinions [ECF No. 114] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 22nd day of December, 2021.

_____
**RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE**