UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-CV-81558-RAR

CLARENCE SIMMONS, et al.,

        Plaintiffs,

v.

FORD MOTOR COMPANY,

        Defendant.

_____/

**DEFENDANT FORD MOTOR COMPANY'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

JOHN M. THOMAS
KRISTA L. LENART
DYKEMA GOSSETT PLLC
2723 South State Street
Suite 400
Ann Arbor, MI 48104
Telephone: (734) 214-7613
Facsimile: (855) 262-3751
JThomas@dykema.com
KLenart@dykema.com

ERIC C. TEW
DYKEMA GOSSETT PLLC
1301 K. Street, N.W., Suite 1100 West
Washington, D.C. 20005
Telephone: (202) 906-8600
Facsimile: (855) 221-0913
ETew@dykema.com

WENDY F. LUMISH
Florida Bar No. 334332
CHRISTINE L. WELSTEAD
Florida Bar No. 970956
BOWMAN AND BROOKE LLP
Two Alhambra Plaza, Suite 800
Coral Gables, Florida 33134
Telephone: (305) 995-5600
Facsimile: (305) 995-6100
Wendy.Lumish@bowmanandbrooke.com
Christine.Welstead@bowmanandbrooke.com

*Counsel for Defendant, Ford Motor Company*

<u>**TABLE OF CONTENTS**</u>

MOTION FOR PARTIAL SUMMARY JUDGMENT..................................................................... 1

INTRODUCTION ...................................................................................................................... 1

FACTS ...................................................................................................................................... 2

     A.    Plaintiffs And Their Vehicles. ................................................................. 2

     B.    Plaintiffs' Corrosion Warranty ............................................................... 2

     C.    Plaintiffs' Experiences With Leading Edge Aluminum Hood Corrosion.................. 3

     D.    Plaintiffs' Unfair or Deceptive Warranty (Perforation) Claim. .................................. 4

STANDARD FOR SUMMARY JUDGMENT.......................................................................... 4

ARGUMENT ............................................................................................................................ 5

     I.    PLAINTIFFS' DECEPTIVE AND UNFAIR WARRANTY (PERFORATION) CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS. ........................... 5

     II.    THE WARRANTY IS NOT DECEPTIVE BECAUSE IT EXPLAINS EXACTLY WHAT IS COVERED. .................................................................. 9

     III.    PLAINTIFFS CANNOT PROVE DAMAGES.......................................................... 11

CONCLUSION......................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Pages**

**Cases**

*Anderson v. Am. Family Ins. Co.*,
 350 F. Supp. 3d 1295 (M.D. Ga. 2018) ...................................................................13

*Beauty Time, Inc. v. VU Skin Sys.*,
 118 F.3d 140 (3d Cir. 1997)...................................................................................7

*Berry v. Budget Rent A Car Sys., Inc.*,
 497 F. Supp. 2d 1361 (S.D. Fla. 2007) .................................................................9

*Carriuolo v. GM Co.*,
 823 F.3d 977 (11th Cir. 2016) ........................................................................11, 12

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986)...............................................................................................5

*Clearview Concrete Prods. Corp. v. S. Charles Gherardi*,
 88 A.D.2d 461, 453 N.Y.S.2d 750 (N.Y. App. Div. 1982) .................................11

*Cunningham v. Masterwear Corp.*,
 569 F.3d 673 (7th Cir. 2009) ...............................................................................13

*Dimond v. Darden Rests., Inc.*,
 2014 U.S. Dist. LEXIS 94004 (S.D.N.Y. July 9, 2014) ........................................9

*Dinan v. Sandisk LLC*,
 No. 18-CV-05420-BLF, 2019 WL 2327923 (N.D. Cal. May 31, 2019) .................9

*Fitzpatrick v. City of Atlanta*,
 2 F.3d 1112 (11th Cir. 1993) .................................................................................4

*Gould v. Helen of Troy, Ltd.*,
 2017 U.S. Dist. LEXIS 54611 (S.D.N.Y. Mar. 30, 2017) ......................................6

*Hoosier Bancorp v. Rasmussen*,
 90 F.3d 180 (7th Cir. 1996) ...................................................................................7

*Koski v. Carrier Corp.*,
 347 F. Supp. 3d 1185 (S.D. Fla. 2017) .................................................................8

*Lewis v. Mercedes-Benz USA, LLC*,
 2021 U.S. Dist. LEXIS 60557 (S.D. Fla. Mar. 30, 2021)....................................5, 6

*Liberty Square Realty Corp. v. The Doe Fund, Inc.*,
   161 N.Y.S.3d 19 (App. Div. 2021) ...................................................................6

*Marshall v. Hyundai Motor Am.*,
   51 F. Supp. 3d 451 (S.D.N.Y. 2014) ..............................................................6, 8

*Mickens v. Ford Motor Co.*,
   2015 U.S. Dist. LEXIS 121029 (D.N.J. Sep. 10, 2015) ......................................10

*Ohio State Troopers Ass'n v. Point Blank Enters.*,
   481 F. Supp. 3d 1258 (S.D. Fla. 2020) .............................................................11

*Omni Health Sols., LLC v. Zurich Am. Ins. Co.*,
   2019 U.S. Dist. LEXIS 65994 (M.D. Ga. Apr. 18, 2019), *aff'd in relevant part*
   857 F. App'x 501 (11th Cir. 2021) ..................................................................13

*Pattee v. Nexus RVs LLC*,
   2022 U.S. Dist. LEXIS 49490 (N.D. Ind. Mar. 21, 2022) .....................................13

*Pearl v. City of Long Beach*,
   296 F.3d 76 (2d Cir. 2002)................................................................................6

*Rafter v. Liddle*,
   704 F. Supp. 2d 370 (S.D.N.Y. 2010) .................................................................7

*Ross v. Louise Wise Servs., Inc.*,
   868 N.E.2d 189 (N.Y. 2007).............................................................................6

*Simmons v. Ford Motor Co.*,
   592 F. Supp. 3d 1262 (S.D. Fla. 2022) .........................................................11, 12

*Thiedemann v. Mercedes-Benz USA, LLC*,
   872 A.2d 783 (N.J. 2005)................................................................................10

*Tidwell v. Carter Prod.*,
   135 F.3d 1422 (11th Cir. 1998) .........................................................................5

*United States v. Lawrence*,
   276 F.3d 193 (5th Cir. 2001) ............................................................................5

*Wyse v. Gerard Roof Prods., LLC*,
   2019 U.S. Dist. LEXIS 223310 (N.D. Fla. Nov. 12, 2019)....................................5

*Zlotnick v. Premier Sales Grp., Inc.*,
   431 F. Supp. 2d 1290 (S.D. Fla. 2006), *aff'd*, 480 F.3d 1281 (11th Cir. 2007).........................9

*Zoe G. v Frederick F.G.*,
   617 N.Y.S. 2d 370 (App. Div. 1994) ..................................................................6

*Zumpano v. Quinn*,
    849 N.E.2d 926 (N.Y. 2006) ................................................................................6

## Statutes

Fla. Stat. § 95.11(3)(f) ........................................................................................5

Florida Deceptive and Unfair Trade Practices Act ............................................ *passim*

New York General Business Law § 349 .............................................................. *passim*

## Other Authorities

Fed. R. Civ. P. 56(c) ..........................................................................................4

Joseph M. McLaughlin, *Practice Commentaries*
    N.Y. C.P.L.R. C201:6 ....................................................................................6

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Ford Motor Company ("Ford") moves for summary judgment on the Unfair or Deceptive Warranty (Perforation) claims asserted by Plaintiffs Joseph Dabbs, Anne Erdman, and Brian Yarborough (collectively "Plaintiffs").[1]

## INTRODUCTION

Plaintiffs are Florida and New York purchasers of Ford vehicles who assert claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and New York General Business Law § 349. Insofar as relevant to this motion, these claims are based on allegedly deceptive language in Ford's warranty that provides extended coverage for corrosion but only if perforation occurs. These claims fail for three separate reasons.

First, the claims are plainly barred by the applicable statutes of limitations. It is undisputed that the delayed discovery rule does not apply to claims under FDUTPA or GBL § 349, the statutes therefore began to run on the date of purchase, and for all Plaintiffs the statutes expired before suit was filed. No evidence supports tolling for any reason.

Second, the extended warranty is not deceptive because it describes plainly what is covered (perforating corrosion) and what is not (non-perforating corrosion). Surface corrosion is simply not covered after 3 years or 36,000 miles, regardless of whether the components are made of steel

---

[1]The specific claims at issue are the FDUTPA and GBL § 349 claims addressed in Section IV(B) of the Court's order denying Plaintiff's Motion for Class Certification [DE 205]). Plaintiffs have made other claims under FDUTPA and GBL § 349, but they do not intend to continue to pursue certification of those claims in this Court. As discussed with the Court at the December 16, 2022, status conference, Ford at this time is moving for summary judgment only on claims as to which Plaintiffs have indicated an intent to file a renewed motion for class certification. Ford disputes that Plaintiffs should be allowed any further attempts to certify a class, but brings this motion because summary judgment, if granted, will obviate the need for this Court to consider any further class certification issues. Ford reserves its right to seek leave to file summary judgment motions as to other individual claims asserted by Plaintiffs at an appropriate time.

or aluminum. Plaintiffs allege that the extended five-year warranty is illusory because the hoods are made of aluminum and will not perforate, but this (1) ignores that most of the vehicle is made of steel, not aluminum, and (2) assumes that consumers would prefer a steel hood that is less resistant to corrosion generally and far more likely to perforate as a result.

Finally, Plaintiffs have no evidence that the allegedly deceptive warranty caused Plaintiffs to incur any damages. No Plaintiff provided any relevant testimony (nor would they have been qualified to do so) and this Court has already found that Plaintiffs' purported damages expert does not support their claim.

## FACTS

### A.    Plaintiffs And Their Vehicles.

Plaintiffs bought the following vehicles in the indicated states on the stated dates:

Joseph Dabbs (FL): 2013 Explorer, December 31, 2012
Brian Yarborough (NY): 2013 Mustang, October 29, 2013
Anne Erdman (FL): 2014 Mustang, January 2, 2014.

(FSUF & POSUF ¶ 1; POSUF ¶¶ 4, 6.)[2]

### B.    Plaintiffs' Corrosion Warranty

The New Vehicle Limited Warranty that accompanied Plaintiffs' vehicles provided that all forms of corrosion were covered for 3 years or 36,000 miles. (FSUF & POSUF ¶ 10.) It also provided an extended coverage period of 5 years/unlimited miles for perforating corrosion:

Your vehicle's body sheet metal panels are covered for an extended Corrosion Coverage Period, which lasts for five years, regardless of miles driven. The extended warranty coverage only applies if a body sheet metal panel becomes perforated due to corrosion during normal use due to a manufacturing defect in

---

[2] For documents previously filed, references are to Ford's Statement of Undisputed Facts ("FSUF") (ECF 170), Plaintiffs Opposition to Ford's Statement ("POSUF") (ECF 180), and Ford's Reply Statement of Material Facts ("FRSMF") (ECF 193). A citation in the form "FSUF & POSUF ¶ x" or "POSUF & FRSMF ¶ x" indicates that the stated fact is undisputed.

factory--supplied materials or factory workmanship.

(POSUF ¶ 4; *accord* FSUF & POSUF ¶ 10.) This extended corrosion warranty applied to all body parts, whether made of steel or aluminum. (FSUF & PSOF ¶ 53.) Most body parts on Plaintiffs' vehicles were made of steel. (*Id.*) At the time Plaintiffs bought their vehicles, Ford's competitors likewise provided extended corrosion coverage only for perforating corrosion—and that remains true today. (FSUF & POSUF ¶ 54.)[3]

No Plaintiff could recall reading the warranty before buying their vehicle. (FSUF & POSUF ¶¶ 55-56.)

### C.    Plaintiffs' Experiences With Leading Edge Aluminum Hood Corrosion.

All Plaintiffs claimed to have experienced corrosion on the leading edge of their aluminum hoods.

**Erdman.** Plaintiff Erdman brought her vehicle to a Ford dealer for repair of leading-edge hood corrosion in December 2014. (POSUF ¶ 4.) According to Plaintiff Erdman, the dealer told her it would replace the hood, but instead the dealer simply sanded and repainted the existing hood. (*Id.*) Plaintiff Erdman claims that the corrosion on the hood reappeared in 2018. (*Id.*) A Ford dealer told her that the repair would not be covered by warranty because of the perforation requirement. (*Id.* at 1-2.)

**Dabbs.** Plaintiff Dabbs noticed leading edge hood corrosion on his vehicle in late 2015 or early 2016, but he did not seek repairs until October 2017. (POSUF ¶ 6 at 4-5.) A Ford dealer told him repairs would not be covered by warranty because there was no perforation. (*Id.*) Therefore,

---

[3] Ford changed its warranty for 2016 and later model vehicles to provide that the five-year extended coverage period applied to all corrosion of all aluminum parts (although the perforation requirement still applied to steel components). (FSUF & POSUF ¶ 10; POSUF & FRSMF ¶ 98.)

Plaintiff Dabbs paid for the repair. (*Id.*)

**Yarborough.** Plaintiff Yarborough noticed leading edge hood corrosion while on a cross-country trip in the summer of 2015, before he had driven 36,000 miles. (*Id.* at 5.) He immediately took his vehicle to a Ford dealer in Utah who told him that he could wait to obtain repairs until he returned to New York because he had a five-year unlimited corrosion warranty. (*Id.* at 6.) However, by the time Plaintiff Yarborough returned to New York and sought repairs in August or September 2015, he had driven more than 36,000 miles. (*Id.*) Therefore, the Ford dealer in New York declined to cover repairs under warranty because there was no perforation. (*Id.*)

### D.    Plaintiffs' Unfair or Deceptive Warranty (Perforation) Claim.

Plaintiffs describe the FDUTPA and GBL § 349 claims based on the allegedly deceptive warranty language as follows:

> Ford provided a warranty purporting to cover corrosion called an "extended Corrosion Coverage" warranty. Any reasonable consumer receiving the "extended Corrosion Coverage" warranty would, of course, expect that it would actually cover corrosion. But it did not. Instead, Ford provided coverage only if the corrosion "perforated" – or made holes in – the hoods. But as Ford knew all along, hoods made from aluminum do not perforate because of corrosion. And aluminum is the only metal used for the Class Vehicles' hoods. Thus, consumers who bought 2013-2015 model year Class Vehicles were left with a "corrosion warranty" in name only.

(ECF 96 [Plaintiffs' Motion for Class Certification] at 2.)

### <u>STANDARD FOR SUMMARY JUDGMENT</u>

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). The burden then shifts to the party opposing summary judgment, who may not simply "rest

upon the mere allegations or denials of the . . . pleadings," but instead must "set forth specific facts showing that there is a genuine issue for trial." *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (citation omitted). The non-movant must establish the essential elements of the claims for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Moreover, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law." *Tidwell v. Carter Prod.*, 135 F.3d 1422, 1425 (11th Cir. 1998).

## ARGUMENT

I.  **PLAINTIFFS' DECEPTIVE AND UNFAIR WARRANTY (PERFORATION) CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.**

The applicable statutes of limitations bar Plaintiffs' FDUPTA and GBL § 349 claims based on the perforation requirement in the extended Corrosion Warranty.

**Erdman and Dabbs.** FDUTPA claims are subject to a four-year statute of limitations. Fla. Stat. § 95.11(3)(f); *Lewis v. Mercedes-Benz USA, LLC*, 2021 U.S. Dist. LEXIS 60557, at \*75 (S.D. Fla. Mar. 30, 2021). "When a FDUTPA claim is based on a product purchase, the statute begins to run from the date of sale." *Id.* at 1228. The delayed discovery rule does not apply, and the statute begins to run on the date of purchase, even if the plaintiff has not discovered the facts giving rise to the claim. *See, e.g., id.; Wyse v. Gerard Roof Prods., LLC*, 2019 U.S. Dist. LEXIS 223310, at \*4 (N.D. Fla. Nov. 12, 2019).

Plaintiff Dabbs bought his vehicle in Florida on December 31, 2012 (POSUF ¶ 6 at 4), and the statute expired on December 31, 2016. Plaintiff Erdman bought her vehicle in Florida on January 2, 2014 (POSUF ¶ 4 at 1), and the statute expired on January 2, 2018. Because their complaint was not filed until November 14, 2018, more than four years later in both cases, the claims of these Plaintiffs are time-barred.

**Yarborough.** GBL § 349 claims are subject to a three-year statute of limitations that runs from the date of purchase. *Gould v. Helen of Troy, Ltd.*, 2017 U.S. Dist. LEXIS 54611, at *6-7 (S.D.N.Y. Mar. 30, 2017). As in Florida, the delayed discovery rule does not apply in New York. *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 462 (S.D.N.Y. 2014) (delayed discovery rule does not apply to GBL § 349). Yarborough bought his vehicle in New York on October 29, 2013 (POSUF ¶ 6 at 5), and the statute expired on October 29, 2016. He filed suit more than two years after the expiration of the statute. His claim too is time-barred.

**No Fraudulent Concealment Tolling.** Plaintiffs might argue that the statute was tolled by fraudulent concealment or (as fraudulent concealment is known in New York) equitable estoppel.[4] But under both Florida and New York law, tolling under this theory requires evidence that Ford engaged in fraudulent conduct that goes "beyond mere non-disclosure" and involves the "active and willful concealment" of Plaintiffs' claims. *Lewis*, 2021 U.S. Dist. LEXIS 60557, at *76; *accord Ross v. Louise Wise Servs., Inc.*, 868 N.E.2d 189, 198 (N.Y. 2007) (the remedy of tolling "is triggered by some conduct on the part of the defendant after the initial wrongdoing; mere silence or failure to disclose the wrongdoing is insufficient"), *quoting Zoe G. v Frederick F.G.*, 617 N.Y.S. 2d 370 (App. Div. 1994); *Liberty Square Realty Corp. v. The Doe Fund, Inc.*, 161 N.Y.S.3d 19, 26 (App. Div. 2021) ("Such allegations, however, are 'mere silence' or 'failure to disclose' rather than the 'affirmative wrongdoing' required for equitable estoppel.") (citation omitted), *quoting Ross,* 868 N.E.2d at 198, and *Zumpano v. Quinn*, 849 N.E.2d 926, 929 (N.Y.

---

[4] "New York appears to use the label 'equitable estoppel' to cover both the circumstances 'where the defendant conceals from the plaintiff the fact that he has a cause of action [and] where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired.'" *Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002), *quoting* Joseph M. McLaughlin, *Practice Commentaries*, N.Y. C.P.L.R. C201:6, at 63 (McKinney 1990). The latter type of equitable estoppel is addressed below.

2006).

The facts relevant to Plaintiffs' Deceptive and Unfair Warranty (Perforation) claim at issue here are (1) the hoods are made of aluminum, (2) aluminum hoods allegedly do not perforate because of corrosion, and (3) the extended Corrosion Warranty does not cover non-perforating corrosion. Plaintiffs have no evidence that Ford *ever* took any affirmative action to prevent them from gaining knowledge of any of these alleged facts. They have no evidence that Ford ever told or suggested to Plaintiffs that the hoods were made of steel, not aluminum; that aluminum would perforate; or that the extended Corrosion Warranty would cover non-perforating corrosion.

In fact, Ford dealers expressly confirmed to all three Plaintiffs that non-perforating corrosion would *not* be covered. (POSUF ¶ 4 at 3, ¶ 6 at 5, 6.) As noted above, in the summer of 2015 a Ford dealer in Utah did mistakenly suggest to Plaintiff Yarborough that the extended warranty would cover non-perforating corrosion. (POSUF ¶ 5 at 5-6.) But this is irrelevant for at least two reasons. First, the statement by the dealer cannot be attributed to Ford, because Plaintiffs have no evidence that the Utah dealer was acting as an agent of Ford.[5] Second, "under New York law, fraudulent concealment tolls the running of the statute of limitations until such time as the plaintiff discovers the fraud, or could with reasonable diligence have discovered it." *Rafter v. Liddle*, 704 F. Supp. 2d 370, 377 (S.D.N.Y. 2010). Assuming that the Utah dealer's mistake constitutes fraud sufficient to toll the statute, Plaintiff Yarborough discovered the fraud in August or September 2015, when another dealer in New York declined to cover his corrosion under the

---

[5] *See, e.g., Beauty Time, Inc. v. VU Skin Sys.*, 118 F.3d 140, 148 (3d Cir. 1997)("The doctrine of fraudulent concealment … requires a showing that defendant himself prevented plaintiff from discovering the facts …."); *Hoosier Bancorp v. Rasmussen*, 90 F.3d 180, 183 (7th Cir. 1996) ("Estoppel is only appropriate where the prospective defendant himself has done something to prevent the prospective plaintiff from suing in time.").

extended warranty because there was no perforation. (POSUF ¶ 5 at 6.) Thus, the three-year statute began to run against Yarborough no later than September 2015 and expired no later than September 2018.

Any argument that Ford fraudulently concealed the Deceptive and Unfair Warranty (Perforation) Claim is entirely lacking in merit.

**No Equitable Estoppel.** Equally lacking in merit is any claim that Ford is equitably estopped from relying on the statute of limitations. Equitable estoppel requires proof that both plaintiff and defendant had actual knowledge of the plaintiff's cause of action, but the defendant's intentional misconduct caused the plaintiff to forgo suit until the limitations period expired. *See Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1193 (S.D. Fla. 2017) (holding that equitable estoppel "presupposes that the plaintiff knew of the facts underlying the cause of action but delayed filing suit because of the defendant's conduct"); *Marshall*, 51 F. Supp. 3d at 463 ("Equitable estoppel [under New York law] . . . permits the tolling of the statute of limitations in extraordinary circumstances where the plaintiff knew of the existence of his cause of action, but the defendant's misconduct caused the plaintiff to delay in bringing suit.").

Any claim of equitable estoppel fails on both counts. Plaintiffs do not claim that they knew of their cause of action before the statute of limitations expired, and this alone defeats any claim of equitable estoppel. *See, e.g., Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1193 (S.D. Fla. 2017) ("Here, Plaintiffs allege that they did not discover, and could not have reasonably discovered, their cause of action until after the statute of limitations had run. Therefore, they cannot satisfy the requirements for equitable estoppel ….") (citation omitted). And, just as they have no evidence that Ford fraudulently concealed any relevant facts, they have not presented any evidence that Ford did anything to delay them from suing within the statute of limitations.

8

Plaintiffs' Deceptive and Unfair Warranty Claim (Perforation) claims under FDUTPA and GBL § 349 are barred by the statute of limitations.

## II.   THE WARRANTY IS NOT DECEPTIVE BECAUSE IT EXPLAINS EXACTLY WHAT IS COVERED.

The extended Corrosion Warranty provides coverage of 5 years/unlimited miles for corrosion to the body panels, but this coverage "*only* applies if a body sheet metal panel becomes perforated due to corrosion during normal use due to a manufacturing defect in factory-supplied materials or factory workmanship." (POSUF ¶ 4; FSUF & POSUF ¶ 10, emphasis added.) Thus, "[w]hat ultimately dooms Plaintiff's claims is that Defendant tells the consumer exactly what she is getting." *Dinan v. Sandisk LLC*, No. 18-CV-05420-BLF, 2019 WL 2327923, at *7 (N.D. Cal. May 31, 2019); *see also Zlotnick v. Premier Sales Grp., Inc*., 431 F. Supp. 2d 1290, 1295 (S.D. Fla. 2006), *aff'd*, 480 F.3d 1281 (11th Cir. 2007) (where language of reservation agreement was clear that it could be terminated, plaintiff could not establish a "deception that is likely to cause injury to a reasonable relying consumer," when defendant terminated the agreement); *Berry v. Budget Rent A Car Sys., Inc*., 497 F. Supp. 2d 1361, 1367 (S.D. Fla. 2007) (cost recovery fee charged by rental car company was not deceptive where it was clearly disclosed at the time of the rental); *Dimond v. Darden Rests., Inc.,* 2014 U.S. Dist. LEXIS 94004, at *22 (S.D.N.Y. July 9, 2014) ("Where a defendant fully disclosed the terms and conditions of an alleged deceptive transaction that caused harm to plaintiff, an action under GBL § 349 will not lie.") (quotation omitted, collecting cases).

Even though the warranty clearly told Plaintiffs what warranty coverage they were receiving—and Plaintiffs would have known what they were getting had they read the warranty—Plaintiffs nevertheless claim that Ford should have told them that the hoods were made of aluminum and that aluminum does not perforate. It is true that aluminum is superior to steel in

both overall corrosion performance and in its resistance to perforating corrosion. (FSUF & PSOF ¶ 52.) But this improvement in vehicle reliability is hardly a basis on which to claim fraud. Indeed, the court in *Mickens v. Ford Motor Co.*, 2015 U.S. Dist. LEXIS 121029 (D.N.J. Sep. 10, 2015) recognized the oddity of the same claim that Plaintiffs copied in this case:

> There is something counterintuitive . . . about a claim based on an apparent *improvement* in the cars' design that rendered perforation less likely. Plaintiffs' position implies a preference for a design that would fail catastrophically, entitling them to make a claim under the five-year warranty.

*Mickens*, 2015 U.S. Dist. LEXIS 121029, at *34 n. 14.

Moreover, Plaintiffs' claim ignores the fact that the extended coverage applies to the whole vehicle, not just the hood, and most of the body panels are made of steel; they cannot claim that the extended coverage was somehow illusory because they do not dispute that it still provided valuable coverage to all those steel body panels. Plaintiffs' claim is even more nonsensical when considering the fact that, after the five-year warranty expires, perforating corrosion is not covered at all. No reasonable consumer would prefer a steel body panel that is more likely to perforate in the first place just so they can make a warranty claim, but even if they did, they certainly would not want perforation once the warranty has expired.

Further, the fact that Ford chose to amend the warranty in 2016 to provide five-year coverage for aluminum panels regardless of perforation does not render the 2013-2015 warranty language deceptive. This positioned Ford as the industry leader in corrosion warranty coverage for aluminum body panels. Indeed, at the time the subject vehicles were sold, Ford's competitors provided extended corrosion coverage only for corrosion resulting in perforation, and that remains true today. (FSUF & POSUF ¶ 54.) Much like any other vehicle improvement, the fact that Ford provided additional warranty coverage to later model vehicles does not retroactively make the prior warranty deceptive. *Cf. Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 794 (N.J.

2005) (noting that warranty coverage represents "salutary efforts exerted by automobile merchants to address voluntarily and responsibly defects that may arise post-sale" and "[w]e do not wish to discourage self-improvement in the consumer goods industry").

## III.   PLAINTIFFS CANNOT PROVE DAMAGES.

Plaintiffs have no evidence that they read the allegedly deceptive warranty language before buying their vehicles, and they cannot claim that they suffered damages by relying on that language. Plaintiffs seek only "benefit of the bargain" damages, and they agree that Florida and New York measure benefit of the bargain damages as the difference in market value between the product as promised and the product as delivered. (ECF 151, Plaintiffs' Class Certification Motion at 24; ECF 128, Plaintiffs' Opposition to Ford's Motion To Exclude Plaintiffs' Experts at 18.) The Eleventh Circuit, this Court, and New York courts agree. *Carriuolo v. GM Co*., 823 F.3d 977, 986 (11th Cir. 2016) ("FDUTPA damages are measured according to 'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'"); *Ohio State Troopers Ass'n v. Point Blank Enters.*, 481 F. Supp. 3d 1258, 1283 (S.D. Fla. 2020) (same); *Clearview Concrete Prods. Corp. v. S. Charles Gherardi*, 88 A.D.2d 461, 469, 453 N.Y.S.2d 750, 756 (N.Y. App. Div. 1982) ("benefit of the bargain" damages are measured by "the difference between the actual value of the property and the value which it would have had absent the breach").

In denying class certification, this Court explicitly recognized that this was the proper measure of damages applicable to Plaintiffs' Deceptive and Unfair Warranty (Perforation) claim. *Simmons v. Ford Motor Co.*, 592 F. Supp. 3d 1262, 1294 (S.D. Fla. 2022) ("[D]amages under FDUTPA are 'measured according to the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should

11

have been delivered,' and 'GBL § 349 restricts Plaintiffs' recovery to actual damages[.]'"). This Court also understood that Plaintiff had proffered expert testimony from Kirk Kleckner to establish the existence of such damages. *Id.* But this Court also recognized that Mr. Kleckner had said nothing to support Plaintiffs' claim:

> Plaintiffs state that their expert, Kirk Kleckner, "proposes a methodology to evaluate Ford's failure to fulfill the bargain under which consumers agreed to purchase the Class Vehicles at the point of sale due to the deceptive warranties." Mot. at 25. But Kleckner's report, which the Court has reviewed extensively, says nothing of the sort. *See generally* Decl. of Kirk D. Kleckner ("Kleckner Declaration"). Kleckner does not once mention overpayment or the effect that Ford's alleged deception would have on the value of the warranty.

*Simmons,* 592 F. Supp. 3d at 1294-95. In other words, this Court has already found that Plaintiffs have no evidence to establish the existence of benefit-of-the bargain damages caused by the allegedly deceptive perforation warranty.

In fact, in opposing Ford's earlier motion for summary judgment, Plaintiffs did not even purport to rely on Mr. Kleckner's report. Instead, they argued only that Plaintiffs "attested that they overpaid for their vehicles at the point of sale as a result of Ford's deceptive and unfair conduct." (ECF 183 [Plaintiffs' Corrected Opposition to Ford's Motion for Partial Summary Judgment] at 40.) But this argument is misguided for a number of reasons. First, Plaintiff Yarborough did not testify that he overpaid at all, and Plaintiffs Dabbs and Erdman testified that the value of their vehicles was decreased because of the corrosion they actually experienced. (POSUF, Ex. 3 at 86:14-23; Ex. 29 at 72:1-73:3.) No Plaintiff testified that he or she overpaid because of the allegedly deceptive language in the warranty. Second, whether Plaintiffs themselves "overpaid" is immaterial. *Carriuolo,* 823 F.3d at 986 (under the benefit-of-the-bargain measure of damages, "the plaintiff's out-of-pocket payment is immaterial"). Third, "the proper question is not how much the [allegedly deceptive practice] may have reduced the vehicle's perceived value for

any individual purchaser or lessee," but its affect on market price. *Id.* No Plaintiff purported to opine on how the allegedly deceptive warranty language affected the market price of their vehicles. *See Anderson v. Am. Family Ins. Co.*, 350 F. Supp. 3d 1295, 1303 (M.D. Ga. 2018) ("[State law] contemplates evidence regarding the 'market value' of 'an article or property.' Anderson does not opine on the market value of his home. Rather, he offers his testimony that stigma caused the value of his home to decrease. … Anderson's testimony does not constitute evidence of diminished value …."). Finally, even if Plaintiffs had opined on the effect on market value attributable to the allegedly deceptive warranty, they would not have been qualified to do so. *See, e.g., Cunningham v. Masterwear Corp.*, 569 F.3d 673, 676 (7th Cir. 2009) (property owner "could not offer a responsible opinion about the *cause* of a change in the value of his property"); *Pattee v. Nexus RVs LLC*, 2022 U.S. Dist. LEXIS 49490, at *19 (N.D. Ind. Mar. 21, 2022) ("[A] property owner may not testify about the price-lowering effect that various alleged defects had on that property as such appraisal opinions are complex and require expert witnesses."); *Omni Health Sols., LLC v. Zurich Am. Ins. Co.*, 2019 U.S. Dist. LEXIS 65994, at *25- 26 (M.D. Ga. Apr. 18, 2019) ("[D]iminution in value, by its very nature …, requires knowledge of the value of property but also some specialized knowledge of the effects certain kinds of damages and repairs have on the change in that value"), *aff'd in relevant part* 857 F. App'x 501, 515-518 (11th Cir. 2021).

In fact, under the circumstances here, any claim that the allegedly deceptive warranty language had any impact on market value would defy common sense. The extended Corrosion Warranty applied to the entire vehicle, and yet Plaintiffs claim it was deceptive only as to a small fraction of that vehicle, i.e., the aluminum hood. Further, at the time Plaintiffs' vehicles were sold, Ford's warranty—which covered corrosion for five years only if perforation occurred—was consistent with the warranties offered by its competitors, which also warranted corrosion for five

years only if perforation occurred. The market value of Ford vehicles could have been artificially inflated only if the market for some reason thought that Ford was offering a better warranty than its competitors—a five-year warranty that did not require perforation—even though the plain language of the Ford warranty *did* require perforation, just like competitors' warranties.

In short, neither the New York Plaintiff (Yarborough) nor the Florida Plaintiffs (Dabbs and Erdman) can establish damages caused by the allegedly misleading warranty language, and summary judgment is required.

**<u>CONCLUSION</u>**

For all the foregoing reasons, partial summary judgment should be granted for Ford.

Respectfully submitted,

JOHN M. THOMAS
KRISTA L. LENART
DYKEMA GOSSETT PLLC
2723 South State Street
Suite 400
Ann Arbor, MI 48104
Telephone: (734) 214-7613
Facsimile: (855) 262-3751
JThomas@dykema.com
KLenart@dykema.com

ERIC C. TEW
DYKEMA GOSSETT PLLC
1301 K. Street, N.W.
Suite 1100 West
Washington, D.C. 20005
Telephone: (202) 906-8600
Facsimile: (855) 221-0913
ETew@dykema.com

BOWMAN AND BROOKE LLP
Two Alhambra Plaza, Suite 800
Coral Gables, Florida 33134
Telephone: (305) 995-5600
Facsimile: (305) 995-6100

By: _____*/s/ Wendy F. Lumish*_____
   WENDY F. LUMISH
   Florida Bar No. 334332
   wendy.lumish@bowmanandbrooke.com
   CHRISTINE L. WELSTEAD
   Florida Bar No. 970956
   Christine.welstead@bowmanandbrooke.com

*Counsel for Defendant, Ford Motor Company*

15

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 9, 2023, the foregoing was filed using the

Court's CM/ECF system, which will send electronic notice of the same to all interested parties.

By:___*/s/ Wendy F. Lumish*_____
      WENDY F. LUMISH