UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-81558-RAR

**CLARENCE SIMMONS,** *et al.*,

    Plaintiffs,

v.

**FORD MOTOR COMPANY**,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This action involves a warranty provided by Defendant Ford Motor Company that Plaintiffs maintain is misleading under the Florida Deceptive and Unfair Trade Practices Act and New York General Business Law § 349. While Plaintiffs posit that their warranty claims may be amenable to class certification under Federal Rule of Civil Procedure 23(c)(4), Defendant has requested the Court address a threshold issue before reconsidering such a subclass: whether Plaintiffs' individual warranty claims are barred by the applicable statutes of limitations.

Currently before the Court is Defendant's Motion for Partial Summary Judgment ("Motion" or "MSJ"), [ECF No. 234], accompanied by Defendant's Statement of Undisputed Facts, [ECF No. 170]. Defendant Ford Motor Company ("Ford") seeks the dismissal of Deceptive and Unfair Warranty (Perforation) claims asserted by three Plaintiffs: Joseph Dabbs, Brian Yarborough, and Anne Erdman.[1] Plaintiffs filed a Response in Opposition ("Response"), [ECF No. 236], supported by Plaintiffs' Opposition and Additional Facts ("Plaintiffs' Statement of Facts"), [ECF No. 180], and a Supplemental Statement of Material Facts ("Plaintiffs'

---

[1] In this Order, the term "Plaintiffs" shall refer only to the three Plaintiffs at issue in Defendant's Motion.

Supplemental Statement of Facts"), [ECF No. 237]. Defendant filed a Reply, [ECF No. 240], and a Response to Plaintiffs' Supplemental Statement of Facts ("Defendant's Supplemental Statement of Facts"), [ECF No. 241]. The Court held a hearing on the Motion on June 26, 2023. [ECF No. 247]. The Motion is now ripe for adjudication. The Court being fully advised, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion, [ECF No. 234], is **GRANTED** for the reasons stated herein.

## BACKGROUND[2]

Plaintiffs are Florida and New York purchasers of Ford vehicles who assert several causes of action against Ford related to corroding hoods on their vehicles. The sole claims Ford seeks to dismiss in its Motion for Summary Judgment are Plaintiffs' "Deceptive and Unfair Warranty (Perforation)" claims brought under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and New York General Business Law § 349 ("GBL"). MSJ at 1. The FDUTPA and GBL claims at issue assert the New Vehicle Limited Warranty ("NVLW") that Ford provided with each of Plaintiffs' vehicles is deceptive. MSJ at 1. Ford's Motion argues that Plaintiffs' FDUTPA and GBL claims are time barred and fail as a matter of law.

### I. Procedural Posture

On March 21, 2022, this Court issued an Order Denying Plaintiffs' Motion for Class Certification ("Class Cert. Order"), [ECF No. 205]. The Second Amended Class Action Complaint ("Complaint") alleges three nationwide counts and state law counts under the laws of 13 states. Compl. at 59–135. However, Plaintiffs only sought class certification regarding their nationwide count for unjust enrichment and their state counts under California, Florida, and New York law as

---

[2] The Court presumes the parties are familiar with the substantive background and procedural posture of this case, as thoroughly described in the Court's Order Denying Plaintiffs' Motion for Class Certification, [ECF No. 205]. Thus, the Court will only address the facts and procedural posture necessary for purposes of the present Motion, with all inferences made in favor of Plaintiffs.

to three unfair or deceptive practices including design defect, "perforation warranty," and "ineffective warranty repair." *See* Class Cert. Order at 8.

The Court concluded that Plaintiffs did not have standing to bring the class allegations as pled and provided four revised subclasses, limited in scope. Relevant here, the Court identified one subclass as the *Unfair or Deceptive Warranty Class (Perforation)* ("Perforation Warranty"). *Id.* at 20. This subclass, the Court noted, may include: (1) Florida purchasers who purchased a 2013 Explorer; (2) Florida purchasers who purchased a 2014 Mustang; and (3) New York purchasers who purchased a 2014 Mustang. *Id.* After identifying this as an acceptable subclass for purposes of standing, the Court nevertheless denied certification of this subclass because Plaintiffs had failed to provide an acceptable class-wide measure of damages for this claim. *Id.* at 35–36, 39–41. Given the Court's focus on the putative subclass, it did not have the opportunity to address the fate of the individual Plaintiffs' claims and their ability to adequately represent a Perforation Warranty subclass. Defendant's Motion addressing these individual claims followed.

## II. Warranties

Plaintiffs contend that Ford's warranty was unfair and deceptive. The NVLW provided that all forms of corrosion of Plaintiffs' vehicles were covered for three years or 36,000 miles, whichever came first. MSJ at 1. Ford also provided an extended coverage period of five years and unlimited miles for *perforating* corrosion ("Extended Warranty"). *Id.* This is the warranty at issue in Plaintiffs' claims. Specifically, the Extended Warranty states, "[y]our vehicle's body sheet metal panels are covered for an extended Corrosion Coverage Period, which lasts for five years, regardless of miles driven." *Id.* The Extended Warranty further states that it "only applies if a body sheet metal panel becomes perforated due to corrosion during normal use due to a manufacturing defect in factory-supplied materials or factory workmanship." *Id.* at 2–3. This perforation requirement means the corrosion must cause a hole in the metal for the Extended

Warranty to provide coverage after the initial three-year period covered by the NVLW expires. *Id.* The Extended Warranty covered all body parts of the vehicle, whether made of steel or aluminum. *Id.* at 3.

The problem with the Extended Warranty, Plaintiffs argue, is that the aluminum parts of Plaintiffs' vehicles, such as the vehicle hoods, cannot perforate from corrosion. Only steel panels on the vehicles perforate. Resp. at 2. Moreover, viewing the facts in the light most favorable to Plaintiffs, the evidence indicates that Ford knew that the Extended Warranty requirement of perforating corrosion would never cover the aluminum hoods of the Ford vehicles within the five-year extended coverage period. *Id.*[3] The Court presumes that Ford was aware that some consumers did not know that aluminum does not perforate from corrosion because Ford understood their customers were confused and dissatisfied by having their claims denied due to the perforation requirement. *Id.* Despite Ford's knowledge, Ford never told consumers that the hoods of their vehicles were made of aluminum or that aluminum does not perforate. *Id.*

### III. Plaintiffs' Corrosion

Each of the three Plaintiffs allege to have experienced corrosion on the leading edge of the aluminum hoods of their cars. The differences in their individual experiences are relevant to the issues presented in Defendant's Motion.

#### A. *Plaintiff Dabbs*

Plaintiff Joseph Dabbs, a Florida resident, purchased a 2013 Ford Explorer on December 31, 2012. MSJ at 2. In "late 2015 or early 2016," Plaintiff Dabbs noticed leading edge hood

---

[3] For example, Plaintiffs identify testimony from Steven Simko, a Ford engineer, who agreed that "a warranty that only covers perforated corrosion is not adequate to cover the types of corrosion at issue in this case." *Id.* at 3. Additionally, Plaintiffs point out that in a 2014 letter, the president of Ford's customer-service division wrote to the president of Ford North America recommending removing the perforation requirement in the Extended Warranty, citing "customer confusion" and "dissatisfaction." *Id.*

corrosion on his vehicle. However, he did not seek repairs until October 2017. *Id.* at 3. A Ford dealer immediately told Plaintiff Dabbs that the repair would not be covered by warranty because there was no perforation. *Id.* Plaintiff Dabbs had his vehicle repaired, and he paid out of pocket. *Id.* at 4.

### B. Plaintiff Yarborough

Plaintiff Brian Yarborough, a New York resident, purchased a 2013 Ford Mustang on October 29, 2013. *Id.* at 2. In the summer of 2015, Plaintiff Yarborough was on a cross-country trip from New York when he noticed leading edge hood corrosion on his vehicle. *Id.* at 4. He took his vehicle to a Ford dealer in Utah, but the dealer told him that he could wait to obtain repairs until he returned to New York because he had a five-year unlimited corrosion warranty. *Id.* However, by the time Plaintiff Yarborough returned to New York and sought repairs in August or September 2015, he had driven more than 36,000 miles, so the New York Ford dealer declined to cover repairs under warranty because there was no perforation. *Id.* On September 24, 2015, Plaintiff Yarborough received a Ford-approved sand-and-repaint repair from a third-party body shop. *Id.*

### C. Plaintiff Erdman

Plaintiff Anne Erdman, a Florida resident, purchased a 2014 Ford Mustang on January 2, 2014. MSJ at 3. In December 2014, Plaintiff Erdman brought her vehicle to a Ford dealer for repair of leading-edge hood corrosion. *Id.* The dealer told Plaintiff Erdman that he would replace the hood, but instead the dealer sanded and repainted the original hood. *Id.* This first repair was paid for under warranty, as it occurred within the first three years after purchase. Defendant's Statement of Undisputed Facts ¶ 4. On August 20, 2018, Plaintiff Erdman returned to a Ford dealer to complain about corrosion on her hood; this time, Ford denied her request to replace the hood due to the perforation requirement in the extended warranty. Resp. at 5.

## LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted), and "must resolve all reasonable doubts about the facts in favor of the non-movant," *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990) (citation omitted). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *Chapman v. Al Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (citation omitted). And "[a] genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Id.*

## ANALYSIS

### I. Plaintiffs' Claims Are Untimely

For the reasons set forth below, Plaintiffs' Perforation Warranty claims under FDUTPA and GBL § 349 are barred by the statutes of limitations and cannot be tolled. Accordingly, all three Plaintiffs' claims are untimely and warrant dismissal.

#### A. Statutes of Limitations

FDUTPA claims are subject to a four-year statute of limitations. Fla. Stat. § 95.11(3)(f). As this Court has previously held, "[w]hen a FDUTPA claim is based on a product purchase, the statute begins to run from the date of sale." *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1228 (S.D. Fla. 2021) (citing *Fisher v. Harley-Davidson Motor Grp., LLC*, No. 19-14154,

2019 WL 8014364, at *2 (S.D. Fla. Oct. 18, 2019)). Likewise, GBL § 349 claims are subject to a three-year statute of limitations that runs from the date of purchase. *Gould v. Helen of Troy Ltd.*, No. 16-CIV-2033-GBD, 2017 WL 1319810, at *3 (S.D.N.Y. Mar. 30, 2017).

Here, the filing of this case occurred outside the applicable statutes of limitations. Plaintiff Dabbs bought his vehicle in Florida on December 31, 2012, and therefore the statute expired on December 31, 2016. Plaintiff Erdman bought her vehicle in Florida on January 2, 2014, and therefore the statute expired on January 2, 2018. Plaintiff Yarborough bought his vehicle in New York on October 29, 2013, and therefore the statute expired on October 29, 2016. Because Plaintiffs filed their Complaint on November 14, 2018, their claims fall outside the relevant statute of limitations period.[4]

### B. Tolling

Plaintiffs' Perforation Warranty claims only survive summary judgment if the statutes of limitations are tolled due to fraudulent concealment (under Florida law) or equitable estoppel (under New York law). Under both Florida and New York law, Plaintiffs must show that the Defendant took affirmative actions to prevent Plaintiffs from learning of their underlying claim (*i.e.*, that the perforation requirement in the Extended Warranty is deceptive or unfair) during the

---

[4] Plaintiffs maintain each of their deceptive warranty claims accrued when their warranty claims for repair were denied because of the perforation requirement—not when they purchased their vehicles. However, Plaintiffs conceded at the hearing that the single case they rely on for this proposition, *Sundance Apartments I, Inc. v. Gen. Elec. Cap. Corp.*, 581 F. Supp. 2d 1215, 1223 (S.D. Fla. 2008), is distinguishable. June 26, 2023 Hearing Transcript ("H. Tr.") at 7:10–8:20 ("I do understand that the case law does generally state that the injury accrues at the point of purchase. That's definitely been our primary argument. That's one we still would be, you know, advancing. This is really a secondary argument in response to the class certification order. And the *Sundance* case, it's not directly on point . . . ."). In any event, there is no question that the cause of action accrues at the time of sale. *See, e.g.*, *Lewis*, 530 F. Supp. 3d at 1228; *Sclar v. OsteoMed, L.P.*, No. 17-23247, 2018 WL 559137, at *3 (S.D. Fla. Jan. 24, 2018) ("Plaintiff counters that the claim is not time barred because the statute of limitation begins to run when the last element constituting the cause of action occurs . . . This Court has already rejected that argument."); *Speier-Roche v. Volkswagen Grp. of Am. Inc.*, No. 14-20107, 2014 WL 1745050, at *6 (S.D. Fla. Apr. 30, 2014) ("A FDUTPA claim accrues at the time of purchase or lease of a product, not upon discovery of an alleged defect.").

period that the statute of limitations ran, which prevented Plaintiffs from bringing their claims. *See, e.g.*, *Lewis*, 530 F. Supp. 3d at 1228; *Thompson v. Metro. Life Ins. Co.*, 149 F. Supp. 2d 38, 49 (S.D.N.Y. 2001). Ford contends, with respect to all three Plaintiffs, that they never took affirmative actions to conceal information about the Extended Warranty from Plaintiffs. Plaintiffs assert that at the time they each received sand-and-repaint repairs of their vehicles' hoods, Ford knew the repairs would only temporarily fix the appearance of corrosion rather than completely solve the defect. Therefore, Plaintiffs argue, Ford acted fraudulently, which prevented Plaintiffs from learning of their Perforation Warranty claims within the statute of limitations period. However, viewing all facts in the light most favorable to the non-moving party, Plaintiffs' tolling argument fails as a matter of law with respect to all three Plaintiffs.

### i. *Legal Requirements for Fraudulent Concealment and Equitable Estoppel*

Generally, under Florida law, tolling due to fraudulent concealment requires evidence that the defendant "engage[d] in the willful concealment of the cause of action using fraudulent means to achieve that concealment." *Lewis*, 530 F. Supp. 3d at 1228. Plaintiffs seeking to toll the statutes of limitations for fraudulent concealment must allege "(1) successful concealment of the cause of action, (2) fraudulent means to achieve that concealment, and (3) plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of his claim." *Id.* (citing *Burr v. Philip Morris USA Inc.*, No. 07-01429, 2012 WL 5290164, at *3 (M.D. Fla. Sept. 28, 2012)). Importantly, the fraudulent conduct must go "beyond mere non-disclosure" and involve the "active and willful concealment" of the facts underlying plaintiffs' claims. *Id*. The act of fraudulent concealment may not simply consist of a defendant's failure to disclose a defect or the basis of a cause of action. *See Fisher*, 2019 WL 8014364, at *3. "[G]enerally the fraud must be of such a nature as to constitute active concealment to prevent inquiry or elude investigation or to mislead a person who could claim a cause of action . . . ." *Nuwer v. FCA US LLC*, 552 F. Supp.

3d 1344, 1363 (S.D. Fla. 2021). The defendant's fraudulent conduct concealing the cause of action must have, of course, occurred after the cause of action accrued. *Id.* Additionally, fraudulent concealment must be pled with particularity under Federal Rule of Civil Procedure 9(b). *Fisher*, 2019 WL 8014364, at *2.

Tolling under New York law is similar. Under New York law, equitable estoppel for purposes of tolling a statute of limitations "results from representations or conduct which have induced a party to postpone bringing suit on a known cause of action, or from fraudulent concealment of an action which is unknown to a party." *Knaysi v. A. H. Robins Co.*, 679 F.2d 1366, 1368 (11th Cir. 1982). "In order to prevail on an equitable tolling theory, plaintiffs must show that they were not aware of their claim either because the nature of the defendant's conduct was 'self-concealing' or because the defendant affirmatively acted to prevent plaintiff from discovering the conduct. Plaintiffs must also show that the concealment prevented their discovery of the claims within the limitations period and that they exercised due diligence in investigating their rights." *Thompson*, 149 F. Supp. 2d at 49. Equitable estoppel tolling "is applied only in rare circumstances[.]" *Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 648–49 (E.D.N.Y. 2012). "[A] Plaintiff seeking an equitable toll of the statute of limitations must show that Defendant's action rendered Plaintiff unable, despite his due diligence, to commence a timely action." *Id.* The Court must find there is "at least a question of fact as to: (1) wrongful concealment by the defendant, (2) which prevented the plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing discovery of the claim." *Id.* While New York law allows for the application of the equitable tolling doctrine "as a matter of fairness," it is reserved for "a situation where a plaintiff could show that it would have been impossible for a reasonably prudent person to learn about his or her cause of action." *Id.* (citations omitted).

### ii. *Plaintiffs' Purported Tolling Events Are Insufficient*

#### a. Plaintiff Dabbs

First, the Court disposes of Plaintiff Dabbs' claim. As noted previously, Plaintiff Dabbs purchased his vehicle in Florida on December 31, 2012, and therefore the statute of limitations expired on December 31, 2016. However, Plaintiff Dabbs did not obtain a sand-and-repaint repair until October 2017, outside the statute of limitations period. Resp. at 5. In fact, Plaintiffs' counsel conceded at the hearing that Plaintiff Dabbs' sand-and-repaint repair occurred outside the statute of limitations period. H. Tr. at 10:13–19 ("Yeah. If accrual is at the point of purchase, the event that would otherwise be considered a fraudulent concealment event, the sand and repair for Dabbs, occurred after the statute of limitations already expired."). Therefore, even if the Court were to find fraudulent concealment tolling based on sand-and-repaint repairs generally, such tolling would not apply to Plaintiff Dabbs' claim because his sand-and-repaint repair occurred *after* the statute of limitations period ran.

#### b. Plaintiff Yarborough

Plaintiff Yarborough, from New York, was provided a sand-and-repaint repair for his hood. Plaintiff Yarborough contends he was misled when he brought his claim to a Ford dealership in Utah while on a road trip, and the Utah Ford dealer assured him he could wait until his return to New York to file his claim under the warranty. The Utah Ford dealer did not inform Plaintiff Yarborough at that time that his claim would be rejected, whether in Utah or New York, due to the perforation requirement in the Extended Warranty. When Plaintiff Yarborough returned to New York, he presented his claim to a Ford dealer there. Still within the statute of limitations period, the New York Ford dealer rejected the claim due to the perforation requirement in the Extended Warranty. Later that same month, Plaintiff Yarborough obtained a sand-and-repaint repair from a

third-party body shop. Resp. at 5. Plaintiff Yarborough paid for the hood corrosion repairs himself. Defendant's Statement of Material Facts ¶ 6.

Plaintiff Yarborough argues that Ford took an affirmative action to conceal the deceptive nature of the Extended Warranty in the summer of 2015 when the Utah Ford dealer mistakenly suggested to Plaintiff Yarborough that the Extended Warranty would cover non-perforating corrosion. However, this representation cannot toll the statute of limitations given the undisputed facts before the Court. "[U]nder New York law, fraudulent concealment tolls the running of the statute of limitations until such time as the plaintiff discovers the fraud, or could with reasonable diligence have discovered it." *Rafter v. Liddle*, 704 F. Supp. 2d 370, 377 (S.D.N.Y. 2010). Even if the Utah Ford dealer's mistake constitutes fraud sufficient to toll the statute of limitations, Plaintiff Yarborough discovered the Utah Ford dealership was incorrect in August or September 2015, when another dealer in New York declined to cover his corrosion under the Extended Warranty for lack of perforation. MSJ at 7–8. Plaintiff Yarborough's statute of limitations expired on October 29, 2016. Thus, the Utah dealer's incorrect statement about the Extended Warranty was rectified over a year *before* the statute of limitations expired. *See Thompson*, 149 F. Supp. 2d at 49 ("Plaintiffs must also show that the concealment prevented their discovery of the claims within the limitations period . . . ."). Since Plaintiff Yarborough discovered the Utah dealer's misstatement regarding the Extended Warranty within the limitations period, this act is not a basis to toll the statute of limitations.

c. Plaintiff Erdman

Plaintiff Erdman, from Florida, contends that within the statute of limitations period, she was "duped" by a false promise to repair her vehicle's hood corrosion, and she received a sand-and-repaint repair that Ford knew would exacerbate the aluminum hood corrosion. Resp. at 10. Specifically, Plaintiff Erdman observed that the front hood of her vehicle became corroded, so she

took it to a Ford dealer.[5] The Ford dealer performed repairs because the vehicle was still under the initial three-year warranty. *See* Defendant's Statement of Material Facts ¶ 4. The repairs were purportedly defective in that the dealer sanded and repainted in lieu of replacing the hood, as represented. Plaintiff Erdmann maintains this "affirmative trick and conduct" disincentivized her from later reviewing the Extended Warranty. Resp. at 11.

But Ford's act of repairing Plaintiff Erdman's vehicle under the terms of the NVLW does not constitute fraud—and therefore cannot toll the statute of limitations. To hold otherwise would lead to an illogical conclusion. Had Ford replaced Plaintiff Erdman's hood as promised, Plaintiff Erdman's incentives to review the Extended Warranty would not have differed. In other words, that Plaintiff Erdman did not receive the service she was promised had no bearing on her ability to learn the facts needed to bring a deceptive warranty claim.[6] Following Plaintiff Erdman's logic to its natural conclusion, she would only know to check the Extended Warranty if Ford had taken no action under the initial three-year warranty. This is counterintuitive. *See, e.g.*, *Mickens v. Ford Motor Co.*, No. 10-5842, 2015 WL 5310755, at *12 (D.N.J. Sept. 10, 2015) ("There is something counterintuitive, however, about a claim based on an apparent improvement in the cars' design that rendered perforation less likely. Plaintiffs' position implies a preference for a design that would fail catastrophically, entitling them to make a claim under the five-year warranty.").

---

[5] The parties dispute whether the dealer was in fact an agent or representative of Ford. *See* MSJ at 7; Resp. at 8–9. For purposes of adjudicating Defendant's Motion, the Court presumes that the dealer was a Ford agent.

[6] Plaintiff Erdman also argued that her claims are saved by "continuing tort tolling" because the statute of limitations began to run each time that Ford committed a deception by telling her that the corrosion on her car would be cured by Ford's replacement or repair policies. Resp. at 12. At the hearing, however, counsel withdrew this theory. H. Tr. at 69:22–70:1 ("I'll just make it easy. We're relying on tolling based on the sand and repair . . . . We don't think we need this continuing tort tolling.").

### *iii.   Plaintiffs' Inadequate Repair Claims Do Not Toll the Statutes of Limitations*

In addition to the Plaintiff-specific arguments, the Court will not toll Plaintiffs' claims due to fraudulent concealment or equitable estoppel because Ford's sand-and-repaint repairs did not prevent Plaintiffs from uncovering the facts needed to establish their claims. Indeed, Plaintiffs had all the information they needed to bring such claims at the time they purchased their vehicles or shortly thereafter. Ford provided an Extended Warranty that covered "body sheet metal panels . . . for an extended corrosion coverage period, which lasts for five years, regardless of miles driven. The extended warranty coverage only applies if a body sheet metal panel becomes perforated due to corrosion during normal use due to a manufacturing defect in factory-supplied materials or factory workmanship." MSJ at 4. The Extended Warranty expressly states that it covered perforating corrosion of the metal panels. *Id.* There is no allegation that Plaintiffs did not understand the word "perforating." *See generally* Resp. Rather, the basis of Plaintiffs' Perforation Warranty claims is that Ford should have told consumers that the hoods were made of aluminum, which will not perforate.

However, to toll the statute of limitations, the fraudulent conduct must go "beyond mere non-disclosure." *Lewis*, 530 F. Supp. 3d at 1228. Ford did not tell Plaintiffs that their hoods were made of aluminum and aluminum will not perforate. But "a Plaintiff seeking an equitable toll of the statute of limitations must show that Defendant's action rendered Plaintiff unable, despite his due diligence, to commence a timely action." *Statler*, 841 F. Supp. 2d at 648–49. Ford's failure to inform Plaintiffs about the traits of the metal used in their vehicle hoods did not prevent Plaintiffs from discovering such characteristics on their own.

That is not to say Plaintiffs are without redress. The Court does not condone the practice of tricking consumers into believing a car part was replaced, when in fact it was sanded and repainted—or otherwise providing repairs that exacerbate an underlying problem. However, even

though Plaintiffs were purportedly misled about the nature of their repairs, it does not follow that Plaintiffs' claims *based on the perforation requirement* must be tolled. And this is where a second problem emerges regarding Plaintiffs' position—they have incorrectly conflated the deceptiveness of the perforation requirement in the Extended Warranty with the potential deceptiveness of the sand-and-repaint repairs. An allegation that the perforation requirement is deceptive is quite different from an allegation that Ford dealers performed inadequate repairs. The two are not the same.

Notably, Plaintiffs are not the first to conflate such claims. *See Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1367 (S.D. Fla. 2007). In *Berry*, plaintiffs alleged a FDUTPA violation based on Budget's rental terms. Plaintiffs averred that it was unfair or deceptive for Budget to charge a "cost recovery fee" in addition to the base rental fee. *Id.* Plaintiffs argued that Budget's practice of itemizing the cost recovery fee was deceptive because Budget advertised a lower rental rate than what Budget offered, thereby deceiving consumers into believing Budget's prices were more affordable than its competitors' prices. *Id.* at 1368. However, the court explained, if that were the case, the *advertising* would be deceptive given its failure to disclose the cost recovery fee, rather than the fee itself. *Id.* (noting the absence of allegations regarding advertisements was "fatal" to plaintiffs' claims "because even under Plaintiffs' theories, it would be the advertising that is deceptive, not the simple existence of the [cost recovery fee]"). Similarly, Plaintiffs here have conflated their Perforation Warranty claims, which allege the perforation requirement in the warranty is deceptive, with separate claims alleging their *repairs* were defective. Indeed, this Court has already recognized the distinction between both sets of claims by previously grouping them into different putative subclasses. *See* Class Cert. Order at 9.

Ultimately, Plaintiffs have failed to raise a material question of fact as it relates to the tolling question. Viewing the facts in the light most favorable to Plaintiffs, the Court cannot

identify any action taken by Ford or its representatives that prevented Plaintiffs from learning of the facts relevant to their Perforation Warranty claims within the relevant statute of limitations period. And Plaintiffs cannot manufacture an argument in favor of tolling by conflating their perforation claims and ineffective repair claims. Accordingly, the statutes of limitations are not tolled, and Plaintiffs' FDUTPA and GBL § 349 claims regarding the perforation requirement in the Extended Warranty fail.

## II. The Extended Warranty Language is Not Deceptive

In addition to Plaintiffs' Perforation Warranty claims falling outside the statutes of limitations, dismissal of said claims is further warranted because the Extended Warranty is not deceptive. Ford argues that the text of its Extended Warranty informs Plaintiffs that it only covers perforating corrosion. Plaintiffs contend that even though the Extended Warranty explicitly states that it only covers perforating corrosion, Ford should have told Plaintiffs that the hoods of their vehicles were made of aluminum, and aluminum, unlike steel, does not perforate. Plaintiffs' theory is that the Extended Warranty is worth less than what they paid for because it would never cover the repair of a corroded hood. The Court agrees with Ford that because the Extended Warranty states exactly what it covers, Plaintiffs' Perforation Warranty claims fail. *See, e.g.*, *Dimond v. Darden Restaurants, Inc.*, No. 13-CV-5244, 2014 WL 3377105, at *7 (S.D.N.Y. July 9, 2014) ("Where a defendant fully disclosed the terms and conditions of an alleged deceptive transaction that caused harm to plaintiff, an action under GBL § 349 will not lie.").

Typically, when purportedly deceptive terms are made available to plaintiffs from the outset, a FDUTPA claim will fail. In *Berry*, discussed previously, the court noted that the cost recovery fee charged by Budget was itemized as a separate charge; accordingly, it could not be deemed unfair or deceptive because it was clearly disclosed at the time of the car rental. 497 F. Supp. 2d at 1367. Similarly, in *Zlotnick v. Premier Sales Group*, Plaintiffs brought a FDUTPA

action against a development agency which solicited purchase/reservation agreements and deposits from Plaintiffs to build condominiums, but once the properties were built, the developer cancelled the contracts to reap the benefits of real estate price increases. *Zlotnick v. Premier Sales Grp., Inc.*, 431 F. Supp. 2d 1290, 1293 (S.D. Fla. 2006), *aff'd*, 480 F.3d 1281 (11th Cir. 2007). There, plaintiff's reservation agreement stated: "Purchaser recognizes that this Reservation Agreement is a reservation solely with respect to a proposed condominium; and accordingly, this Reservation Agreement is not an agreement to sell the Unit . . . . Seller may cancel this Agreement for any reason whatsoever, by giving written notice thereof to Purchaser [], in which even the Reservation Deposit, together with any interest thereon, shall be returned to Purchaser . . . ." *Id.* at 1292. The court concluded that plaintiff had "failed to state a claim under FDUTPA because the express terms of the contract allowed [the developer] to cancel the Reservation Agreement without penalty." *Id.* at 1295.

While these cases are not deceptive warranty cases, their reasoning applies.[7] Here, the Extended Warranty states that it only covered perforating corrosion. Plaintiffs sought repairs for cosmetic corrosion without perforation. Under the express terms of the Extended Warranty, their repairs were not covered. Because these terms were "clearly disclosed at the time of [purchase]" the perforation requirement in the Extended Warranty was not deceptive. *See Berry*, 497 F. Supp. 2d at 1367. As in *Zlotnick*, the express terms of the Extended Warranty allowed Ford to deny coverage for repairs of non-perforated corrosion, regardless of whether Plaintiffs understood or appreciated that express term. 431 F. Supp. 2d at 1295.

---

[7] Notably, the parties do not identify any cases in which a deceptive warranty claim was brought under FDUTPA. The Court observes that deceptive warranty claims (as opposed to defective product claims) are more commonly brought under the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301–2312 (1976). *See, e.g., Sorrentino v. FCA US LLC*, No. 19-80490, 2019 WL 13225201, at *1 (S.D. Fla. July 26, 2019) ("Plaintiff alleges that Defendants' act of selling him a vehicle with Mopar-branded accessories along with a service contract, and then subsequently cancelling the contract based on the alleged ineligibility of the accessories Defendant sold, constitutes a violation of the Magnuson-Moss Warranty Act.").

Moreover, upon reading the NVLW and Extended Warranty, a reasonable consumer would recognize that the Extended Warranty coverage is not identical to the coverage provided under the initial warranty. All corrosion is covered during the first three years. The word "perforation" is not included in the NVLW. That is in clear contrast to the language of the Extended Warranty, which "only applies if a body sheet metal panel becomes perforated due to corrosion." MSJ at 2; *see Dinan v. Sandisk LLC*, No. 18-05420, 2019 WL 2327923, at *7 (N.D. Cal. May 31, 2019) ("What ultimately dooms Plaintiff's claims is that Defendant tells the consumer exactly what she is getting."). A reasonable consumer reading both warranties would see that the two are not the same.

Finally, Plaintiffs argue that under an objectively reasonable consumer standard, consumers would have no idea that they were receiving warranty coverage that offered no protection against the effects of corrosion for their hood panels during the extended coverage period. Resp. at 13 (citing *Morgan v. Enter. Leasing Co. of Fla., LLC*, No. 21-80549, 2021 WL 4709787, at *4 (S.D. Fla. Oct. 8, 2021) ("A deceptive act occurs when there is 'a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'"). But Plaintiffs' argument presumes the Extended Warranty exclusively provides coverage for hood repairs. In reality, however, the Extended Warranty provides coverage for repairs of the *entire* vehicle, much of which is made of steel (and unlike aluminum, can perforate). *See* MSJ at 2. If portions of the vehicle made of steel perforated from corrosion during years three through five, Ford would repair them under the Extended Warranty. Thus, contrary to Plaintiffs' argument, the Extended Warranty is not illusory, and Defendants have

established that Plaintiffs' Perforation Warranty claims brought under FDUTPA and GBL § 349 fail as a matter of law.[8]

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims are barred by the statutes of limitations without any successful route to tolling and the Extended Warranty is not deceptive as a matter of law. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion, [ECF No. 234], is **GRANTED**. Plaintiffs' FDUTPA and GBL § 349 claims regarding the perforation requirement in the Extended Warranty are **DISMISSED** *with prejudice.*

**DONE AND ORDERED** in Miami, Florida, this 13th of September, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

---

[8] Ford also seeks dismissal based on Plaintiffs' flawed damages model. MSJ at 11. While the Court has previously expressed skepticism as to Plaintiffs' damages model, *see* Class Cert. Order at 39–41, the Court need not reach the question of damages here since Plaintiffs' claims are time barred and the Perforation Warranty is not deceptive as a matter of law.